BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: AUTO BODY SHOP ANTITRUST LITIGATION | MDL Docket No. 2557 |

THIS DOCUMENT RELATES TO:

LEIF'S AUTO COLLISION
CENTERS, LLC v. STATE FARM
MUTUAL AUTOMOBILE
INSURANCE CO. OF OREGON, et al.,
CASE NO. 3:14-CV-01777-BR

### PLAINTIFF LEIF'S AUTO COLLISION CENTERS, LLC'S OMNIBUS RESPONSE IN OPPOSITION TO CERTAIN DEFENDANTS' MOTIONS TO VACATE CONDITIONAL TRANSFER ORDER (CTO-4)

Plaintiff Leif's Auto Collision Centers, LLC submits this Omnibus Response to the various motions to vacate Conditional Transfer Order 4 ("CTO-4") filed by Defendants Oregon Mutual Insurance Company ("Oregon Mutual"), Grange Insurance Association ("Grange"), and Omni Insurance Company ("Omni") (collectively, "Objectors"). (*See* Dkt. Nos. 355, 362, 369, 379).[1]  In essence, Objectors urge this Panel to cut directly to the merits of this litigation and determine that the allegations against them will not withstand scrutiny, despite the early stage of the proceedings.  Grange goes so far as to predict that Plaintiff "will be unable to produce any evidence to support [the] claims against [it]."  (Grange Mem. Supp. Mot. Vacate CTO-4 at 5, Dkt. No. 362-1.)  The fear these three Objectors express is that they, all so-called regional insurers, will be swept up in a massive consolidated proceeding that will cause delay and expense to them

---

[1] Omni withdrew its December 23, 2014 motion and papers in support of its motion to vacate CTO-4 (Dkt. No. 369) and filed its "Response in Support of Motion to Vacate CTO" (Dkt. No. 379) on December 31, 2014.  Plaintiff thus responds to the latter filing.

1

individually, without regard to the efficiencies that the sixty-three non-objecting Defendants, Plaintiff, and the judiciary stand to gain.  Plaintiff respectfully submits that this strays from the analysis required by 28 U.S.C. § 1407(a) and underestimates the abilities of the transferee court.

## I.  BACKGROUND

Plaintiff filed its Complaint in the U.S. District Court for the District of Oregon on November 7, 2014, initiating the "Oregon Action."  (Dkt. No. 259-8.)  The substance of the Complaint asserts violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1–7, through price fixing and boycotting, as well as several state-law causes of actions.

To date, twenty-two similar actions have been transferred to MDL 2557 for pretrial proceedings before the Honorable Gregory A. Presnell, U.S. District Court Judge for the Middle District of Florida.  All of the transferred cases allege a similar fact pattern and are premised on legal theories that are nearly identical to those included in the Transfer Order creating MDL 2557.  (*See* Aug. 8, 2014 Transfer Order, Dkt. No. 167.)  Any variation among the centralized cases is the result of the availability of certain alternative grounds for recovery based in state law.

Plaintiff alleges that Defendants, automobile insurance companies, have engaged in a combination or conspiracy in violation of the Sherman Act and have refused to compensate Plaintiff fully for work it has performed.  Plaintiff also alleges that Defendants steered customers away from its business to enforce payment ceilings.  Specifically, Defendants' tactics include:

- working in concert to enforce arbitrarily determined payment ceilings for work Plaintiff performed;

- working in concert to enforce arbitrarily determined payment ceilings for paint and materials;

- illegally suppressing labor rates;

- boycotting Plaintiff's auto shops, and other body shops, that refused to comply with the arbitrary payment ceilings; and

- enlisting innocent third parties to effectuate defendants' boycotts.

As with the actions already centralized in MDL 2557, Plaintiff seeks punitive damages on the grounds that defendants' actions were willful, intentional, and known to violate a 1963 consent decree, which expressly prohibits insurance companies from engaging in the activities at issue. The factual allegations and the relief sought are consistent from state to state because the defendant insurers have consistently acted unlawfully nationwide.

The factual and legal similarities between the Oregon Action and its sister actions provide sufficient justification for transferring this matter. The Panel, by this point well-acquainted with the transferred actions, entered a conditional transfer order on November 21, 2014 (CTO-4, Dkt. No. 260), which was finalized on December 2, 2014, without opposition as to transfer of the Oregon Action (Dkt. No. 271). Defendant Oregon Mutual, stating that it had not received notice of finalization of CTO-4 required under Rule 7.1(b) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, objected to transfer after the fact. (Def. Oregon Mutual's Mot. Reinstate CTO-4, Dkt. No. 273.) Following reinstatement of CTO-4, the Panel established a briefing schedule. Objectors then filed substantively similar motions to vacate CTO-4. (*See* Dkt. Nos. 355, 362, 369.) They argue that they have not engaged in the actions set forth in the Complaint and therefore should not be included in the MDL. Specifically, Objectors argue that they are named in only a single action in Oregon, that they do not operate a

3

direct repair program ("DRP") as alleged in the Oregon Complaint, and that all evidence and witnesses lie within the borders of the State of Oregon in order to assert that transfer of the Oregon Action would not achieve the efficiency objectives of collecting like cases into a single forum for pretrial proceedings.

Respectfully, the arguments do not avail the Objectors. Based on the common questions of facts and law, opportunities to economize pretrial proceedings and discovery, and convenience of the many common parties and their counsel involved in the array of MDL 2557 actions, transfer of the Oregon Action is appropriate.

## II. ARGUMENT

Pursuant to 28 U.S.C. § 1407(a), the Panel may transfer and coordinate civil cases for pretrial proceedings upon a showing that: (1) they "involve one or more common questions of fact"; (2) consolidation would further "the convenience of the parties and the witnesses"; and (3) consolidation would "promote the just and efficient conduct of [the] actions." The purpose of Section 1407 is "to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." Manual for Complex Litigation (Fourth) § 20.131 (2004) (citing *In re Plumbing Fixture*, 298 F. Supp. 484 (J.P.M.L. 1968)).

Under this prevailing standard, Objectors' motions should be denied to clear the way for final transfer of the Oregon Action to MDL 2557. Discovery on the merits of Plaintiff's claims will be substantially identical to that in the other MDL cases; coordination with previously transferred cases will promote efficiency and just results as

each rests upon the same core factual allegations and federal theories of liability.[2] Transfer will prevent duplicative discovery; eliminate conflicting pretrial rulings; and conserve the efforts and resources of the judiciary, the parties, and witnesses. See *In re N.Y. Mun. Sec. Litig.*, 439 F. Supp. 267, 269 (J.P.M.L. 1977).

The Objectors do not allege that the Oregon Action differs in any substantial manner from the cases previously transferred to MDL 2557; they argue that they are not liable for the actions alleged in the Complaint.[3] With respect, Plaintiff contends that this is an argument inapplicable to this stage of the litigation and should not have an effect on the Panel's transfer decision, as it is entirely absent from the factors set forth in Section 1407(a). Objectors cite no authority for the proposition that denial of wrongdoing is even an element of consideration for this Panel, much less a deciding factor.

Presumably, this argument is predicated upon a fundamental, though perhaps not fully intentional, misreading of the facts set forth in the Complaint. It is irrelevant, for instance, if any of the Objectors maintain a DRP or not. The Complaint clearly alleges that DRP terms and payment ceilings are enforced against non-DRP shops (such as Plaintiff) by the Defendants, including those Defendants without their own formal

---

[2] Although some variation exists between the consolidated actions' state-law causes of action, this does not affect this factor, because discovery related to the federal causes of action will also apply to the state causes of action.

[3] This undermines Objector Oregon Mutual's attempts to compare *In re Amino Acid Lysine Antitrust Litigation*, 910 F. Supp. 696, 701 (1995), with the Oregon Action. *In re Lysine* involved *allegations* that marketers of lysine, corn sweeteners, and citric acid had fixed prices in the distinct markets for those individual products. The Panel found consolidation by product but not by defendant to be appropriate because the latter would have "involve[d] different products, with different uses, produced for the most part by different manufacturers, and sold by them to different alleged classes of purchasers." *Id.* at   The Oregon Action, like those already transferred to MDL 2557, alleges a common series of anticompetitive activities engaged in by many common defendants on an industry-wide basis.

5

DRPs—the key allegation being that Defendants have formed an illegal combination or conspiracy to enforce lower rates in violation of antitrust laws.

Objectors further assert that the Oregon Action contains claims wholly unique to Oregon and that consolidation with other cases would merely distract and convolute the "real issues" in Plaintiff's case. Objectors also assert the transferee judge, Judge Presnell, would concentrate on the "major issues" in the MDL and not address their issues until much later in the proceedings.

With respect to the former argument, Objectors do not identify any wholly unique aspect of the Oregon Action other than, perhaps, potential witnesses and evidence located in Oregon rather than a state in which another auto body action has been brought. But that is true in all instances encompassing cases from around the United States consolidated into an MDL. Furthermore, any small factors unique to Oregon would not appreciably affect the Panel's determination in this matter: Transfer under Section 1407 does not require a complete identity of common factual issues or parties, and the presence of additional facts or differing legal theories is not significant where the actions still arise from a common factual core. *See In re Blue Cross Blue Shield Antitrust Litig.*, 908 F. Supp. 2d 1373, 1375 (J.P.M.L. 2012)).[4]

Nor do Objectors identify their unique "issues" or how they will create inefficiencies that Judge Presnell would be incapable of managing. Because the

---

[4] Objector Oregon Mutual makes reference to *In re Provident Securities Litigation*, 715 F. Supp. 2d 1356 (J.P.M.L. 2010) to assert that a common factual core among cases should not lead ineluctably to transfer. *Provident Securities*, however, involved only three cases and disparate allegations about the type of conduct that that defendant broker-dealers had engaged in while fronting Ponzi schemes. *Id.* at 1357. By virtue of their basis in antitrust, the MDL 2557 actions, as alleged, necessarily capture common collusive or conspiratorial acts that do not vary substantially from insurer to insurer or state by state.

allegations set forth in the Complaint, the legal theories of recovery, and every other relevant matter apply to all Defendants—including Objectors—there is no plausible basis for Objectors' conclusion that they are somehow unique. To the extent Objectors argue that their individual issues may "linger in an MDL in which the majority of claims are brought against [other] defendants [who have a more] substantial market share," the Panel recently expressed its confidence that such "defendants can be accommodated by the transferee judge in a manner that guarantees the just and efficient resolution of all cases." *In re AndroGel Prods. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014).

Discovery in the Oregon Action will be substantively, if not wholly, identical to that of the other actions transferred to MDL 2557. Centralization will allow for common witnesses to be deposed a single time and allow Judge Presnell to establish a streamlined document-production procedure. Given the large number of actions encompassed in this MDL, if the Oregon Action is not transferred there is a high likelihood of competing and contradictory discovery orders, varying deadlines, and duplication of discovery efforts. Finalizing transfer of the Oregon Action will ensure that a single court will manage pretrial proceedings and scheduling to minimize inconvenience and inefficiency to all parties.

The vast majority of Defendants in the Oregon Action are also defendants in cases previously transferred to MDL 2557 and are therefore already required to appear in the Middle District of Florida. Further consolidation would be most convenient for this large contingent of counsel. *See In re Air Crash Disaster near Chicago*, 476 F. Supp. 445, 449 n.4 (J.P.M.L. 1979) ("Convenience of counsel often coincides with convenience of the parties they represent and is a factor to be considered under Section 1407"); *cf.*

Multidistrict Litigation Manual § 5:16 (2010) (listing "[c]onvenience of counsel" as a factor that the Panel considers in determining transferee district). And any inconvenience to Objectors is eclipsed by the previously stated benefits.

Transfer would also minimize the expenditure of judicial and party resources. Separate pretrial proceedings, one before a federal court in Oregon and another in Florida, would require nearly every Defendant insurer named in the Oregon Action to respond to duplicative discovery requests and litigate the same issues in multiple forums before multiple judges. It is nearly unfathomable to believe that the potential for duplicative discovery and motions is low and that the risk of conflicting pretrial decisions, as Objectors imply, is minimal considering the factual and legal similarities between the Oregon Action and the actions centralized in MDL 2557.

Indeed, the only rational conclusion when considering transfer of the Oregon Action is the one the Panel has already made: "Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent rulings on pretrial matters; and conserve the resources of the parties, their counsel and the judiciary." (Aug. 8, 2014 Transfer Order at 3, Dkt. No. 167.)

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Panel deny Objectors' motions to vacate CTO-4 and finalize transfer of the Oregon Action to MDL 2557 pending before Judge Presnell in the Middle District of Florida.

Dated this 13th day of January, 2015.

                                              TONKON TORP LLP

                                              By: /s/ *Michael Willes*
                                                   Michael Willes
                                                   1600 Pioneer Tower
                                                 888 SW Fifth Avenue
                                                 Portland, OR 97204
                                                 Tel: (503) 802-5737
                                                 Fax: (503) 274-8779
                                                 michael.willes@tonkon.com
                                                 Attorneys for Plaintiff Leif's Auto
                                                 Collision Centers, LLC

# CERTIFICATE OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that copies of the foregoing PLAINTIFF LEIF'S AUTO COLLISION CENTERS, LLC'S OMNIBUS RESPONSE IN OPPOSITION TO CERTAIN DEFENDANTS' MOTIONS TO VACATE CONDITIONAL TRANSFER ORDER (CTO-4) were served electronically via ECF, or by first-class mail on the parties listed below, on January 13, 2015.

Parties Served by First-Class Mail:

American Commerce Insurance Company
c/o CT Corporation System, RA
388 State Street, #420
Salem, OR 97301

Metropolitan Casualty Insurance Company
c/o CT Corporation System, RA
388 State Street, #420
Salem, OR 97301

Metropolitan Direct Property and Casualty Insurance Company
c/o CT Corporation System, RA
388 State Street, #420
Salem, OR 97301

Enumclaw Property and Casualty Insurance Company
c/o Becky Sellers, RA
4000 Kruse Way Place, Bldg. 3, #200
Lake Oswego, OR 97035

Metropolitan Property and Casualty Insurance Company
c/o CT Corporation System, RA
388 State Street, #420
Salem, OR 97301

Horace Mann Insurance Company
c/o Corporation Service Company, RA
285 Liberty Street NE, #370
Salem, OR 97301

Mutual of Enumclaw Insurance Company
c/o Becky Sellers, RA
4000 Kruse Way Place, Bldg. 3, #200
Lake Oswego, OR 97035

Horace Mann Property & Casualty Insurance Company
c/o Corporation Service Company, RA
285 Liberty Street NE, #370
Salem, OR 97301

Property and Casualty Insurance Company of Hartford
c/o CT Corporation System, RA
388 State Street, #420
Salem, OR 97301

Nationwide Affinity Insurance Company of America
c/o Corporation Service Company, RA
285 Liberty Street NE, #370
Salem, OR 97301

The Travelers Home and Marine Insurance Company
c/o Corporation Service Company, RA
285 Liberty Street NE, #370
Salem, OR 97301

Nationwide Insurance Company of America
c/o Corporation Service Company, RA
285 Liberty Street NE, #370
Salem, OR 97301

Travelers Commercial Insurance Company
c/o Corporation Service Company, RA
285 Liberty Street NE, #370
Salem, OR 97301

Nationwide Mutual Insurance Company
c/o Corporation Service Company, RA
285 Liberty Street NE, #370
Salem, OR 97301

Wawanesa General Insurance Company
c/o CT Corporation System, RA
388 State Street, #420
Salem, OR 97301

Hartford Accident and Indemnity Company
c/o CT Corporation System, RA
388 State Street, #420
Salem, OR 97301

Zurich American Insurance Company of Illinois
c/o Corporation Service Company, RA
285 Liberty Street NE, #370
Salem, OR 97301

Hartford Casualty Insurance Company
c/o CT Corporation System, RA
388 State Street, #420
Salem, OR 97301

Hartford Fire Insurance Company
c/o CT Corporation System, RA
388 State Street, #420
Salem, OR 97301

Hartford Underwriters Insurance Company
c/o CT Corporation System, RA
388 State Street, #420
Salem, OR 97301

By: /s/ *Michael Willes*
Michael Willes
1600 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204
Tel: (503) 802-5737
Fax: (503) 274-8779
michael.willes@tonkon.com
Attorneys for Plaintiff Leif's Auto Collision Centers, LLC

037593/00001/6142608v2

3